# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS LUCKY,<br><br>　　　　　　Plaintiff,<br>v.<br><br>D.K. SISTO, Warden,<br><br>　　　　　　Defendants. | Civil No.07cv653 IEG (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR EVIDENTIARY HEARING**<br><br>[Doc. No. 1] |

Douglas Lucky (Lucky or Petitioner) is a California prisoner serving an eleven-year prison term for selling cocaine and possessing cocaine base for sale. He filed a petition for writ of habeas corpus (Petition) under 28 U.S.C. § 2254 contesting his confinement on constitutional grounds. At issue in the Petition are these claims: (1) the trial court prejudicially erred in failing to specifically instruct the jury regarding use of circumstantial evidence to prove Petitioner's intent to commit the crime, in violation of his due process rights; and (2) Petitioner's sixth amendment right to counsel was violated when his appellate counsel failed to raise an ineffective assistance of counsel claim on the basis that trial counsel failed to challenge the validity of the prior convictions to which Petitioner admitted.

Respondent filed an answer, arguing the Court should deny the Petition. Petitioner filed a traverse, and in it included a request for an evidentiary hearing. This Court has reviewed the Petition, answer, traverse, lodgment and the complete record in this case. After a thorough review, the Court **RECOMMENDS** that the Petition be **DENIED** in its entirety and that the request for evidentiary hearing be **DENIED**.

**PROCEDURAL HISTORY**

A jury convicted Petitioner of selling cocaine and possessing cocaine base for sale.  Lodgment 1 at 60-61.  The jury sustained two allegations for each charge that Petitioner had previously been convicted of the same offenses.  *See* Lodgment 1 at 83-84.  At a bifurcated proceeding, Petitioner admitted a prison prior allegation and a prior strike conviction.  Lodgment 1 at 123.

On January 27, 2005, the trial court sentenced Petitioner to eleven years in prison.  He received four years for count 1, doubled to eight years under the "strike laws," and three consecutive years for one of the enhancement allegations; the court struck the second allegation for count one.  Lodgment 1 at 125.  The Court imposed a four-year term doubled to eight years for count 2, but stayed the term.  Lodgment 1 at 125.  It also stayed imposition of the enhancement allegation and struck the prison prior allegation for count 2.  Lodgment 1 at 125.

Petitioner filed a direct appeal claiming that the trial court prejudicially erred by failing to specifically instruct the jury regarding use of circumstantial evidence to prove intent.  Lodgment 6.  While the appellate court found instructional error, it affirmed the judgment because it held that such error was harmless.  Lodgment 8.

Petitioner then appealed to the California Supreme Court, reasserting his same claim for prejudicial instructional error.  Lodgment 9.  He also argued that his convictions should be reversed because at the time of the offenses he was suffering from a mental defect or illness that rendered him incapable of appreciating the wrongfulness of his actions.  Lodgment 9.  The California Supreme Court summarily denied both claims.  Lodgment 10.

Next, Petitioner filed a state writ of habeas corpus with the California Supreme Court.  Lodgment 11.  In it, he claimed his sixth amendment right to counsel was violated when his appellate counsel failed to raise a claim for ineffective assistance of counsel trial based on the trial counsel's failure to challenge the validity of the prior convictions to which Petitioner admitted.  *Id.*  The California Supreme Court summarily denied the petition.  Lodgment 12.

Petitioner initially filed this Petition in the Central District, but it was transferred to this Court on jurisdictional grounds.  *See* Dkt. No. 1.  Petitioner alleged three claims; the two claims at issue here, as well as a claim that the trial court imposed a sentence that violated the United States Supreme Court's

decision in *California v. Cunningham*, 549 U.S. 270 (2007). Respondent filed a motion to dismiss, asking that the Court dismiss the Petition because it was a "mixed" petition, that is, one that contained both exhausted and unexhausted claims. The Court denied the motion to dismiss as moot because in his opposition, Petitioner requested that the Court dismiss the unexhausted claim and allow him to proceed with only his two exhausted claims. The Court dismissed the unexhausted claim and order Respondent to file an answer to Petitioner's two remaining exhausted claims. The Court addresses the merits of those two claims in this Report and Recommendation.

## **RELEVANT FACTS**[1]

On June 4, 2004, at about 5:00 p.m., Officer David Hall was working undercover in a "buy-bust" operation in an alley by the 1600 block of Logan Avenue, an area known for narcotics activity. Officer Hall approached a man later identified as Lucky and asked if he "had a 20," street terminology for $20 worth of a controlled substance. Lucky responded he did not have a "20," but if Officer Hall waited, some would "show up soon." Officer Hall and Lucky sat down to wait. Lucky twice asked Officer Hall if he was a police officer; Officer Hall responded he was not. Lucky then asked for the money to "go get the rock." Officer Hall gave Lucky four prerecorded $5 bills.

Lucky walked to the street and contacted an individual, but then returned to Officer Hall stating "he was unable to get the substance." Officer Hall remained where he and Lucky had been sitting. Officer Hall and Lucky then walked up the street together, and Lucky asked Officer Hall to wait at a bus stop. Officer Hall did so. Lucky continued walking up the street and Officer Hall lost sight of him. However, Officer Mark Saunders saw Lucky and the second man have a brief conversation and exchange items, although he could not see what they exchanged.

Lucky returned to the bus stop about 10 to 15 minutes after he left Officer Hall. They walked back to the alley where they first met. After they sat down, Lucky showed Officer Hall an off-white substance which was later confirmed to be cocaine base. Upon Lucky's request, Officer Hall gave

---

[1] With the exception of omitting two footnotes, this Court quotes verbatim the factual and procedural summary from the California Court of Appeal's opinion. Lodgment 8 at 2-4. *See* 28 U.S.C.§ 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct"); *Sumner v. Mata*, 449 U.S. 539, 545-47 (1981) (deference is owed to factual findings of state trial and appellate courts); *Garvin v. Farmon*, 258 F.3d 951, 952 (9th Cir. 2001) (paraphrasing facts from the state court opinion).

Lucky his pipe. Lucky broke the cocaine base in half, gave half to Officer Hall, put the other half in the pipe, and started to light the pipe. As soon as Lucky gave Officer Hall the cocaine base, Officer Hall signaled the other police officers to arrest Lucky. As the marked police cars arrived, Officer Hall saw Lucky place the pipe between his feet.

Officer Hall opined the cocaine base Lucky gave him was a usable amount and Lucky possessed it for sale. Although the pipe Officer Hall gave Lucky was never recovered, the prosecution introduced the .09 grams of cocaine base Lucky sold Officer Hall. Additionally, the four prerecorded $5 bills Officer Hall gave Lucky were subsequently found in the possession of the man with whom Lucky exchanged items.

**Jury Instructions.**

During the trial court's discussions with counsel regarding the jury instructions, the court stated it would give CALJIC No. 2.01, the general cautionary instruction pertaining to circumstantial evidence, but not CALJIC No. 2.02, the more specific circumstantial evidence cautionary instruction directed towards specific intent or mental state. Defense counsel requested the court give CALJIC No. 2.02, explaining that the important part of the defense case pertained to mental state, particularly specific intent for the possession for sale charge, and CALJIC No. 2.02 specifically addressed this concept. The court responded that defense counsel could argue based on CALJIC No. 2.02, but because the two instructions were duplicative it would only give CALJIC No. 2.01. The court stated CALJIC No. 2.01 was the proper instruction because in its view the case involved circumstantial evidence on matters in addition to specific intent or mental state.

**LEGAL STANDARD**

**AEDPA Governs this Petition.**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Petition. *See Lindh v. Murphy*, 521 U.S. 320, 336-337 (1997). Under AEDPA, a federal court will not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the decision was (1)

contrary to or involved an unreasonable application of clearly established federal law;[2] or (2) based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

**Decisions that Contradict or Unreasonably Apply Federal Law.**

A federal habeas court may grant relief where the state court (1) decides a case "contrary to" federal law by applying a rule different from the governing law set forth in Supreme Court cases; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A federal court may also grant habeas relief where a state court decision is an "unreasonable application" of federal law, such as where the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies those decisions to the facts at issue.  *Id.*

The state court decision must be more than incorrect or erroneous; to warrant habeas relief the state court's application of "clearly established federal law" must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "Objectively unreasonable" differs from "clear error" in that a federal court cannot grant habeas relief only because it believes that the state court erroneously or incorrectly applied "clearly established federal law;" the application must be objectively unreasonable. *Id.* at 75-76 (internal citation omitted).

**Decisions Based on an Unreasonable Determination of the Facts.**

Section 2254(e)(1) provides:  "[a] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id*.

**Review of the State Court Decision.**

If the state supreme court silently denies a petitioner's appeal with a summary dismissal, the reviewing federal habeas court must look through to the last reasoned state court opinion in making a decision.  *See Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).  Where no reasoned state court decision addresses a petitioner's claim, the reviewing federal court must conduct "an independent

---

[2] "Clearly established federal law," for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

review of the record" to determine whether the state court's decision is objectively unreasonable. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

Here, the decision from the California Court of Appeal is the last-reasoned state court decision that addresses Petitioner's first claim. Petitioner, however, presented his second claim to only the California Supreme Court in a writ for habeas corpus, which that court summarily denied. Therefore, while this Court can look to the Court of Appeal's opinion to decide whether that court's decision contradicted or unreasonably applied federal law regarding the first claim, it must independently review the record to determine whether the California Supreme Court's summary denial of Petitioner's second claim was objectively unreasonable.

## DISCUSSION OF PETITIONER'S CLAIMS

**Claim One: Instructional Error.**

Petitioner first claims the trial court erred by instructing the jury with the general instruction on the use of circumstantial evidence under CALJIC No. 2.01[3]. Pet'n at 5A; Traverse at 7. He says it should have given the CALJIC No. 2.02 instruction because that instruction deals specifically with the use of circumstantial evidence to prove intent.[4] Petitioner argues the erroneous instruction violated his

---

[3]The trial court instructed the jury with the language of CALJIC No. 2.01: "However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion. [¶] Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which the inference necessarily rests must be proved beyond a reasonable doubt. [¶] Also, if the circumstantial evidence [as to any particular count] permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt. [¶] If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." Lodgment 8 at 3, n.1.

[4]CALJIC No. 2.02 provides: "The [specific intent] [or] [and] [mental state] with which an act is done may be shown by the circumstances surrounding the commission of the act. However, you may not [find the defendant guilty of the crime charged . . . ] unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required [specific intent] [or] [and] [mental state] but (2) cannot be reconciled with any other rational conclusion. [¶] Also, if the evidence as to [any] [specific intent] [or] [mental state] permits two reasonable interpretations, one of which points to the existence of the [specific intent] [or] [mental state] and the other to its absence, you must adopt the interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to the [specific intent] [or] [mental state] appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." (CALJIC No.

1  due process rights because his specific intent, or mental state, was the only issue in dispute regarding the
2  charges, and all the evidence going to his specific intent was circumstantial.  He says that this error in
3  instruction prevented the prosecution from having to prove its case beyond a reasonable doubt.
4  Respondent argues that the trial court's instruction did not violate Petitioner's due process rights,
5  because there was no reasonable likelihood that the alleged instructional error had a substantial and
6  injurious effect or influence on the jury's verdict.

7      A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression
8  of federal law binding on the state courts.  *See Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985);
9  *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the
10 interpretation or application of state law.  *Middleton*, 768 F.2d at 1085.  Habeas corpus cannot be used
11 to try state issues *de novo*.  *See Milton v. Wainwright*, 407 U.S. 371, 377 (1972).  Thus, a challenge to
12 jury instructions generally does not give rise to a federal constitutional claim.  *See Middleton*, 768 F.2d
13 at 1085) (citation omitted).

14     A challenge to jury instructions, however, may give rise to federal habeas corpus relief "where
15 [the alleged error's] impact so infects the entire trial that the resulting conviction violates the
16 defendant's right to due process."  *Hines v. Enomoto*, 658 F.2d 667, 673 (9th Cir. 1981) (*citing Quigg v.*
17 *Crist*, 616 F.2d 1107 (9th Cir.1980)).  To raise such a claim in a federal habeas corpus petition, the
18 "error alleged must have resulted in a complete miscarriage of justice."  *Hill v. United States*, 368 U.S.
19 424, 428 (1962); *Crisafi v. Oliver*, 396 F.2d 293, 294-95 (9th Cir. 1968).

20     In general, to warrant federal habeas relief, a challenged jury instruction "cannot be merely
21 'undesirable, erroneous, or even "universally condemned," 'but must violate some due process right
22 guaranteed by the fourteenth amendment."  *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988)
23 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).  To prevail here, Petitioner must demonstrate
24 that CALJIC 2.01 "'so infected the entire trial that the resulting conviction violates due process.'"
25 *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (*quoting Cupp*, 414 U.S. at 147).  This Court must evaluate
26 the challenged jury instruction "in the context of the overall charge to the jury as a component of the
27 entire trial process."  *Prantil*, 843 F.2d at 817 (quotation omitted).  It must also "inquire 'whether there
28

---

2.02 (2005 ed.).)  Lodgment 8 at 4, n.2.

is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle*, 502 U.S. at 72 (*quoting Boyde v. California*, 494 U.S. 370, 380 (1990)).

Here, the Court of Appeal found the circumstantial evidence only addressed Petitioner's specific intent and that the direct evidence addressed the elements other than specific intent. Lodgment 8 at 6. It found that "assuming a circumstantial evidence instruction was required, CALJIC No. 2.02 was the proper instruction." Lodgment 8 at 6. But it further found that even though the trial court did not give the CALJIC No. 2.02 instruction, reversal was not warranted:

> [R]eversal is not warranted because there is no reasonable probability any instructional error affected the verdict. [Citation omitted.] CALJIC No. 2.01 includes the principles in CALJIC No. 2.02. [Citation omitted.] The courts have repeatedly found that the failure to give CALJIC No. 2.02 is harmless error when the jury was instructed with CALJIC No. 2.01. [Citations omitted.] Because the court instructed the jury with CALJIC No. 2.01, the jury was properly advised about the requirements for a guilty finding based on circumstantial evidence. Further, the jury was instructed that the prosecution must prove each element of the charged offenses. Thus, the jury would have understood that if it relied on circumstantial evidence for proof of an element of an offense, it had to apply the rules set forth in CALJIC No. 2.01. Indeed, in closing arguments defense counsel argued this point to the jury, telling the jury that it must apply the circumstantial evidence rules when evaluating the issue of Lucky's specific intent to sell cocaine necessary for the charge of possession for sale.

Lodgment 8 at 7.

The Court of Appeal went on to explain that Petitioner did not suffer any prejudice due to the CALJIC No. 2.01 instruction because of the strength of the prosecution's evidence:

> The prosecution's evidence included the testimony of the police officers who observed the transaction, the cocaine base Lucky gave Officer Hall in exchange for money, copies of the prerecorded currency, and Officer Hall's opinions the cocaine base was a usable amount and Lucky possessed it for sale. Lucky's possession with specific intent to sell was shown by the fact that he did indeed sell the substance to the officer, and his knowledge of the presence and nature of the substance was shown by the fact that he personally handled it and was going to personally smoke it. Lucky did not call any witnesses to refute the prosecution's evidence.

Lodgment 8 at 8.

This Court agrees with the Court of Appeal's finding because the trial court's giving of the CALJIC No. 2.01 jury instruction did not so infect the trial so as to result in a due process violation. First, the trial court did instruct the jury on circumstantial evidence. Defense counsel even reminded the

jury in closing argument that it must apply the circumstantial evidence rules when evaluating the issue of Petitioner's specific intent.  Second, the trial court instructed the jury that the prosecution must prove each element of the charged offenses.  Third, the circumstantial evidence presented supports the jury's finding of specific intent.  The evidence included the cocaine base itself, the prerecorded currency used to execute the transaction, the undercover officer's opinion that the amount of cocaine base was a usable amount and Petitioner possessed it for sale, and testimony regarding Petitioner's actual sale to the undercover officer, his actual handling of the cocaine base, and his attempt to smoke the cocaine base.  Meanwhile, Petitioner did not present evidence to refute the prosecution's circumstantial evidence.

Even if the trial court had instructed with CALJIC No. 2.02, there is no evidence that the jury would have reached a better result for Petitioner.  Petitioner does not demonstrate in any way that the instruction had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abramson*, 507 U.S. 619, 637 (1993).

This Court finds that the state court's ruling regarding the jury instruction was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts.  The Court therefore **RECOMMENDS** that the district judge **DENY** Petitioner's first claim.

**Claim 2: Ineffective Assistance of Appellate Counsel.**

Petitioner claims he was denied the right to effective assistance of appellate counsel based on his failure to raise an ineffective assistance of trial counsel claim on direct appeal.  He argues that the record fails to show that he knowingly and voluntarily admitted the truth of the prior conviction and prior prison term allegations at the bifurcated proceeding.  Pet'n at 5C; Traverse at 11.  Respondent argues that Petitioner has not met his burden of presenting any evidence to support this claim.

The sixth amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The petitioner must show two elements: (1) the attorney's representation fell below an objective standard of reasonableness; and (2) the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  To show prejudice, the petitioner must demonstrate a reasonable probability that but for the counsel's errors, the result of the proceeding would have been different. *Id.*  The court may reject an ineffective assistance of counsel claim upon finding

either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

Unsupported conclusory allegations that an attorney's performance was substandard are not sufficient to show prejudice. *U.S. v. Popoola*, 881 F.2d 811, 813 (9th Cir. 1989). Further, in assessing counsel's performance, the court employs a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Strickland*, 466 U.S. at 690. The standard for assessing the performance of trial and appellate counsel is the same. *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992), cert. denied, 508 U.S. 920 (1993).

Petitioner explains that on December 23, 2004–after the jury's guilty verdict–the trial court accepted Petitioner's admission to the prior conviction and prior prison term allegations even though the prosecution did not provide the sentencing transcript for the alleged prior conviction allegation. Traverse at 13. He also says his trial counsel did not object as to the validity of the prior conviction allegation and coerced him to admit that allegation. Traverse at 13-14. Petitioner claims that his "admission" to the prior conviction and prior term allegations are not valid because the record does not demonstrate whether he admitted those allegations knowingly and voluntarily. Petitioner argues his appellate counsel was ineffective assistance because he failed to raise this claim on direct appeal.

At the start of the second half of the bifurcated trial on December 23, 2004, Petitioner's counsel asked for time to show Petitioner some information and discuss it with him. Lodgment 3 at 213. The court took a recess. Lodgment 3 at 213. When it went back in session, Petitioner's counsel notified the court that Petitioner was willing to admit his priors. Lodgment 3 at 213. The Court then listed out the sentencing times for the different violations and priors. Lodgment 3 at 214-215. Petitioner first said he understood the impact of the priors on his sentence, then, in response to the court's repeated question of whether he understood the consequences of the priors, he said, "I have no choice, ma'am." Lodgment 3 at 215. The court again informed Petitioner of the impact and consequences of admitting the priors:

> The Court: Do you understand what I'm saying what each of these priors does, the impact of the priors? Do you understand that?
>
> Petitioner: Yes, they double.
>
> The Court: The impact of the strike is to double the prison term. The prison term is three, four or five years. The middle terms is four years. The upper terms is five years. The lower term is three years. The impact of a strike is to double that. The

| | | |
|---|---|---|
| | | impact of each of the two 11370.2(A) allegations, each one adds three years in state prison, so that's six years. |
| | | *** |
| | Petitioner: | So even though I did time for that, I do it again? |
| | The Court: | The law sets it up so that if you have a prior conviction it adds time, this time, right, even though you served time for it before. |

Lodgment 3 at 215-216. The court again explained the impact of the priors. Lodgment 3 at 216.

Petitioner again responded that he understood the impact. Lodgment 3 at 217. Then the court advised Petitioner of his rights:

| | | |
|---|---|---|
| | The Court: | I just need to make sure you understand what it does. So on these, all of these priors that are alleged, you have the right to a trial, you, the right to remain silent, and the right to present evidence in your own behalf at no cost to you. Do you understand those rights? |
| | Petitioner: | Yes, ma'am. |
| | The Court: | And do you want to give up those rights and admit to these priors? |
| | Petitioner: | Well, I admit to my priors, your honor. |
| | *** | |
| | The Court: | Is that what you want to do, give up those rights and admit the priors? I have to go through this. I have to ask you these questions. |
| | Petitioner: | Okay, well, I have obligations myself I need to get to, so I have to say yes. |
| | The Court: | I don't know what you mean by you have to say yes. You have these rights. We can go through the trial if you want, and if you want to admit the priors and give up the right to a trial, you can, but you have the right to a trial. You are acting like you are being coerced in some way. You are not coerced at all. |

Lodgment 3 at 217-218. After expressing some uncertainty, Petitioner ultimately affirmed he would give up his right to a trial and admit the priors. Lodgment 3 at 219.

The trial court then went through each of the priors, and Petitioner admitted each of them. Lodgment 3 at 220-222. The trial court then confirmed that Petitioner was entering his plea voluntarily:

| | | |
|---|---|---|
| | The Court: | Okay, and you are agreeing to this plea. It is my understanding that you have had enough time to talk to your attorney about it and review the facts; is that correct? |
| | Petitioner: | Yes, ma'am. |
| | The Court: | Has anybody threatened you or anybody close to you to get you to enter this plea? |
| | *** | |

| | | |
|---|---|---|
| Petitioner: | | I'm getting an offer I can't refuse here. Nobody has threatened me. It just has to be done, whether I like it or not. |
| The Court: | | So nobody has threatened you; is that correct? |
| Petitioner: | | Yes, ma'am. |
| The Court: | | And have you had any liquor or drugs in the last 48 hours? |
| Petitioner: | | No way. |
| The Court: | | So you understand clearly what is going on? |
| Petitioner: | | Yes, ma'am/ I would like - - the doctor said I was very competent; I knew what I was doing. |
| *** | | |
| The Court: | | So you feel like you understand what is going on? |
| Petitioner: | | I do know. |
| The Court: | | Are you satisfieded [*sic*] with your attorneys through this time? |
| Petitioner: | | Everyone in the room, I'm satisfied with everybody. |
| The Court: | | Then I will accept the plea, and I make all the findings, that the defendant has made an intelligent and voluntary waiver of his rights, that he understands the nature of the priors and the consequences of these, and you concur, Ms. Gilliam [Petitioner's counsel]? |
| Ms. Gilliam: | | Yes, your honor. |

Lodgment 3 at 222-224.

The record shows that the trial court explained to Petitioner the impact and consequences of admitting the priors several times. The court answered all of Petitioner's questions, especially when he expressed some confusion or uncertainty. The court also repeatedly informed Petitioner of his rights, and of what he is giving up by admitting the priors. The record also shows Petitioner conferred with his counsel throughout the exchange with the court. Finally, Petitioner's trial counsel concurred with the court that Petitioner was making a knowing and voluntary waiver of his rights.

Petitioner makes only a conclusory allegation that his trial counsel coerced him to admit the alleged prior prison terms even though the prosecution did not provide the sentencing transcript for the alleged prior conviction. But based on this Court's independent review of the record, the record shows that through his questions and comments, Petitioner thought through the potential impact and

1  consequences of his admissions.  Petitioner made a knowing and voluntary admission of his priors and
2  knowingly and voluntarily gave up his right to trial on the priors.  Nothing in the record shows that trial
3  counsel acted ineffectively with respect to Petitioner or coerced him into making the admissions.
4  Consequently, there is no indication that the appellate counsel's representation fell below an objective
5  standard of reasonableness by failing to include an ineffective assistance of counsel claim in the direct
6  appeal.

7  Further, Petitioner does not demonstrate that he suffered prejudice.  His unsupported conclusory
8  allegations regarding his appellate attorney's performance cannot amount to a showing of prejudice.
9  Petitioner does not offer any evidence to show that he had any defense to the prior allegations.  Nor does
10 he show that had his appellate counsel included an ineffective assistance of counsel claim in the direct
11 appeal, there was a reasonable probability that the result of his proceedings would have been different.

12 Based on its independent review of the record, this Court finds that the California Supreme
13 Court's denial of Petitioner's habeas claim for ineffective assistance of appellate counsel was not
14 objectively unreasonable.  The Court therefore **RECOMMENDS** that the district judge **DENY**
15 Petitioner's second claim.

16 **Evidentiary Hearing.**

17 In his traverse Petitioner summarily requests that the Court hold an evidentiary hearing.  He does
18 not provide any substantive reasons for why the Court should hold such a hearing.  Based on this
19 Court's recommended denial of Petitioner's habeas corpus claims, it also **RECOMMENDS** that the
20 request for an evidentiary hearing be **DENIED**.

21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## CONCLUSION

Based on the foregoing analysis, this Court **RECOMMENDS** that the district judge **DENY** the instant Petition for Writ of Habeas Corpus [Doc. No. 1] and **DENY** Petitioner's request for an evidentiary hearing.

**IT IS ORDERED** that no later than *May 19, 2008*, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *May 29, 2008*. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: April 25, 2008

Hon. Nita L. Stormes
U.S. Magistrate Judge