# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| DOUGLAS LUCKY,<br><br>                Petitioner,<br><br>vs.<br><br>D.K. SISTO, Warden<br><br>                Respondent. | CASE NO. 07cv653 IEG (NLS)<br><br>**ORDER:**<br><br>**(1) ADOPTING THE MAGISTRATE JUDGE'S REPORT (Doc. No. 21);**<br><br>**(2) REJECTING PETITIONER'S OBJECTIONS (Doc. No. 22);**<br><br>**(3) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 1);**<br><br>**(4) DENYING PETITIONER'S REQUEST FOR EVIDENTIARY HEARING; and**<br><br>**(5) DENYING PETITIONER A CERTIFICATE OF APPEALABILITY** |
|---|---|

Presently before the Court is a Petition for a Writ of Habeas Corpus ("Petition") filed by Douglas Lucky ("Petitioner") pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2004 conviction for one count of the sale or furnishing of a controlled substance (cocaine base) and one count of possession of cocaine base for sale. Petitioner requests habeas relief on two grounds: (1) prejudicial error in the jury instruction and (2) ineffective assistance of counsel.

The matter was referred to United States Magistrate Judge Nita L. Stormes. On April 25,

2008, Magistrate Judge Stormes issued a Report and Recommendation ("Report"), recommending this Court deny Petitioner's claims on the basis of harmless error with respect to the jury instruction and deny the claim of ineffective assistance of counsel. On May 14, 2008, Petitioner filed objections to the Report. The Court has considered the Report and Petitioner's objections. This Court (1) adopts Magistrate Judge Stormes's Report and (2) dismisses Petitioner's § 2254 petition with prejudice.

## BACKGROUND

**A.     State Procedural Background**

The court hereby incorporates by reference the magistrate judge's accurate recitation of the facts. A jury convicted Petitioner of selling cocaine and possessing cocaine base for sale. (Lodgment 1 at 60-61.) At a bifurcated proceeding, Petitioner admitted to having served time in custody for a prior conviction in addition to a prior strike conviction. (Lodgment 1 at 123.)

On January 27, 2005, the trial court sentenced Petitioner to eleven years in prison. He received four years for count one, doubled to eight years under the "strike laws," and three consecutive years for one of the enhancement allegations; the court struck the second allegation from count one. (Lodgment 1 at 125.)

Petitioner filed a direct appeal with the California Court of Appeal, Fourth Appellate District, claiming that the trial court erred by failing to specifically instruct the jury regarding use of circumstantial evidence to prove intent. (Lodgment 6.) While the appellate court found instructional error, it affirmed the judgment because it held that such error was harmless. (Lodgment 8.)

Petitioner then appealed to the California Supreme Court, reasserting his claim for prejudicial instructional error. (Lodgment 9.) He also argued that his conviction should be reversed because at the time of the offenses he was suffering from a mental defect or illness that rendered him incapable of appreciating the wrongfulness of his actions. (Lodgment 9.) The California Supreme Court summarily denied both claims. (Lodgment 10.)

Next, Petitioner filed a petition for a writ of habeas corpus with the California Supreme Court. In it, he claimed his Sixth Amendment right to counsel was violated when his appellate counsel on direct appeal failed to raise a claim for ineffective assistance of counsel at trial based on the trial

1  counsel's failure to challenge the validity of prior convictions to which Petitioner admitted.
2  (Lodgment 11.)  The California Supreme Court summarily denied this petition. (Lodgment 12.)

4  **B.     Federal Procedural Background**

5  Petitioner initially filed the instant petition in the Central District of California, but it was
6  transferred to this Court on jurisdictional grounds on April 10, 2007.  (Doc. No. 1.)  Initially,
7  Petitioner alleged three claims: (1) prejudicial instructional error, (2) ineffective assistance of counsel,
8  and (3) a claim that the trial court imposed a sentence that violated the United States Supreme Court's
9  decision in California v. Cunningham, 549 U.S. 270 (2007).  Respondent filed a motion to dismiss,
10 asking that the Court dismiss the Petition because it was a "mixed" petition, that is, one that contained
11 both exhausted and unexhausted claims.  The Court denied the motion to dismiss as moot because in
12 his opposition, Petitioner requested that the Court dismiss the unexhausted claim, the Cunningham
13 violation.  The court ordered Respondent to file an answer to Petitioner's two remaining exhausted
14 claims.  (Doc. No. 15.)

15 Respondent filed an answer on March 14, 2008.  (Doc. No. 19.)  Petitioner filed a traverse on
16 April 1, 2008.  (Doc. No. 20.)

17 On April 25, 2008, Magistrate Judge Nita L. Stormes issued the Report recommending that
18 the Petition be denied and Petitioner's request for an evidentiary hearing be denied.  (Doc. No. 21.)
19 On May 14, 2008, Petitioner filed his objections claiming the Report of the Magistrate Judge was in
20 error and requesting review of the same claims.  (Doc. No. 22.)  The Court reviews de novo those
21 portions of the report to which Petitioner objects.  28 U.S.C. § 636(b)(1) ("A judge of the court shall
22 make a de novo determination of those portions of the report or specified proposed findings or
23 recommendations to which objection is made.").

25 **LEGAL STANDARD**

26 The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this decision.
27 Under AEDPA, a federal court will not grant habeas relief with respect to any claim adjudicated on
28 the merits in state court unless the decision was (1) contrary to or involved an unreasonable

application of clearly established federal law, which means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision," or (2) based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. (d); <u>Early v. Packer</u>, 537 U.S. 3, 7-8 (2002).

## DISCUSSION

**A.     Improper Jury Instruction**

<u>Petitioner's Claim</u>

Petitioner claims the trial court erred when it gave California Jury Instruction - Criminal ("CALJIC") No. 2.01 instead of CALJIC No. 2.02.[1]  Petitioner claims he was prejudiced by the error because "the error prevented the prosecution from having to prove its case beyond a reasonable doubt." (Doc. No. 22.)  At trial, counsel for Petitioner argued that giving CALJIC 2.01 eased the government's burden of proof of mental state, because 2.01 provides only a general instruction

---

[1] The trial court instructed the jury with the language of CALJIC No. 2.01, which reads: "However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion. [¶] Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which the inference necessarily rests must be proved beyond a reasonable doubt. [¶] Also, if the circumstantial evidence [as to any particular count] permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt. [¶] If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." (Lodgment 8 at 3, n.1.)

CALJIC No. 2.02 provides: "The [specific intent] [or] [and] [mental state] with which an act is done may be shown by the circumstances surrounding the commission of the act. However, you may not [find the defendant guilty of the crime charged . . . ] unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required [specific intent] [or] [and] [mental state] but (2) cannot be reconciled with any other rational conclusion. [¶] Also, if the evidence as to [any][specific intent] [or] [mental state] permits two reasonable interpretations, one of which points to the existence of the [specific intent] [or] [mental state] and the other to its absence, you must adopt the interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to the [specific intent] [or] [mental state] appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." (CALJIC No. 2.02 (2005 ed.).) (Lodgment 8 at 4, n.2.)

1  regarding circumstantial evidence while 2.02 explains circumstantial evidence specifically in terms
2  of proving mental state. Petitioner's trial counsel argued at the hearing on jury instruction, "the
3  important part of my case has to do with mental state . . . it has to do with specific intent, especially
4  in count two, and this jury instruction, 2.02 specifically addresses that." (Lodgment 6 at 6.) Petitioner
5  believes the trial court's failure to give instruction 2.02 was a violation of his right to due process.
6      Respondent argues the Court of Appeal correctly found that even if the trial court erred in not
7  giving instruction 2.02, the error had no prejudicial effect. (Doc. No. 19-2 at 7-12.)
8
9  The Report of the Magistrate Judge
10     The magistrate judge properly recited the standard for federal habeas corpus relief. Habeas
11 relief is warranted based upon a claim of instructional error "where [the alleged error's] impact so
12 infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines
13 v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)).
14     The magistrate judge found that while the Court of Appeal opined the trial court should have
15 given CALJIC 2.02, the error did not "so infect" the process to warrant reversal. The magistrate judge
16 found the evidence summarized by the Court of Appeal to be convincing enough that the error did not
17 effect the outcome. Accordingly, the magistrate judge concluded Petitioner did not suffer a
18 miscarriage of justice. In addition the magistrate judge found: "Petitioner does not demonstrate in any
19 way that the instruction had a 'substantial and injurious effect or influence in determining the jury's
20 verdict.'" (Doc. No. 21 at 9 citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).)
21
22 Petitioner's Objections
23     Petitioner contends the magistrate judge erred in concluding the error was harmless, arguing
24 the improper jury instruction was "especially egregious" and warrants habeas relief "even absent a
25 substantial influence on the verdict." (Doc. No. 22 at 3 relying on Brecht v. Abrahamson, 507 U.S.
26 at 638 (citing Greer v. Miller, 483 U.S. 756, 769 (1987)).)
27     Further, Petitioner claims that there is at least "grave doubt" as to whether the error had
28 "substantial and injurious effect or influence in determining the jury's verdict," and as such the error

1  was not harmless. (Doc. No. 22 at 3-4 relying on O'Neal v. McAninch, 513 U.S. 432, 435 (1995).)

Discussion

The Ninth Circuit has held that the giving of CALJIC 2.01 in lieu of CALJIC 2.02 does not rise to the level of constitutional error. McMillan v. Gomez, 19 F.3d 465, 468 (9th Cir. 1994) (characterizing the argument that CALJIC 2.02 should have been given rather than 2.01 as "a quibble"). Accordingly, the California Court of Appeal's decision did not involve an "unreasonable application of clearly established federal law." 28 U.S.C. § 2254 (d)(1).

However, even assuming CALJIC 2.02 should have been given, viewing the instructions as a whole, the failure did not "so infect" the process to warrant relief. Brecht, 507 U.S. at 638. The trial court instructed the jury as to the elements of the offense, and CALJIC 2.01 explained to the jury the standard by which it should view circumstantial evidence. In closing arguments, defense counsel highlighted the proper standard the jury should use to evaluate the circumstantial evidence.

Finally, there was ample circumstantial evidence to support the jury's verdict. As the Court of Appeal observed:

> The lack of prejudice is also shown by the strength of the evidence against Lucky. The prosecution's evidence included the testimony of the police officers who observed the transaction, the cocaine base Lucky gave Officer Hall in exchange for money, copies of the prerecorded currency, and Officer Hall's opinions the cocaine base was a usable amount and Lucky possessed it for sale. Lucky's possession with specific intent to sell was shown by the fact that he indeed did sell the substance of the officer, and his knowledge of the presence and nature of the substance was shown by the fact that he personally handled it and was going to personally smoke it. Lucky did not call any witnesses to refute the prosecution's evidence. Given the compelling evidence of the elements of the offenses, including his specific intent and knowledge, the failure to give the circumstantial evidence instruction focusing on specific intent and mental state was clearly harmless.

(Lodgment 8 at 8.)

Petitioner is not entitled to relief on his claim the trial court erred in failing to instruct according to CALJIC 2.02.

**B.   Ineffective Assistance of Counsel**

Petitioner's Claim

Petitioner next claims appellate counsel was constitutionally ineffective for failing to raise on

1  direct appeal that trial counsel coerced Petitioner into admitting prior convictions. Petitioner argues
2  the prosecution was required to show the prior guilty pleas were knowing and voluntary and trial
3  counsel should have advised him to challenge the validity of the prior convictions. (Doc. No. 1.)
4        Respondent argues there is no evidence of prejudice attributable to counsel since the record
5  indicates Petitioner knowingly and voluntarily waived his right to a trial on the priors and the court
6  took the proper steps to ensure Petitioner understood the rights he was giving up by admitting to his
7  prior convictions. (Doc. No. 19 citing Lodgment 3 at 213-219.)

9  The Report of the Magistrate Judge

10        The magistrate judge accurately determined the standard for review: for Petitioner "[t]o prevail
11  on a claim of ineffective assistance of counsel, [he] must show that (1) counsel's representation was
12  deficient and (2) that deficiency prejudiced the outcome of the trial." Strickland v. Washington, 466
13  U.S. 668, 687 (1984). It is Petitioner's burden to prove the admission was involuntary. Little v.
14  Crawford, 449 F.3d 1075, 1080 (9th Cir. 2006). The court can reject Petitioner's claim on either prong
15  of the Strickland standard. There is a strong presumption that counsel rendered adequate services.
16  Strickland, 466 U.S. at 690.

17        The magistrate judge gave the following accurate recitation of the facts as reviewed by this
18  court:

19  > At the start of the second half of the bifurcated trial on December 23, 2004, Petitioner's counsel asked for time to show Petitioner some information and discuss it with him. Lodgment 3 at 213. The court took a recess. Lodgment 3 at 213. When it went back in session, Petitioner's counsel notified the court that Petitioner was willing to admit his priors. Lodgment 3 at 213. The Court then listed out the sentencing times for the different violations and priors. Lodgment 3 at 214-215. Petitioner first said he understood the impact of the priors on his sentence, then, in response to the court's repeated question of whether he understood the consequences of the priors, he said, "I have no choice, ma'am." Lodgment 3 at 215. The court again informed Petitioner of the impact and consequences of admitting the priors:
>
> The Court:  Do you understand what I'm saying each of these priors does, the impact of the priors? Do you understand that?
>
> Petitioner:  Yes, they double.
>
> The Court:  The impact of the strike is to double the prison term. The prison term is three, four, or five years. The middle term is four years. The upper term is five years. The lower term is three years. The impact of the strike is to double that. The impact of

        each of the two 11370.2 (A) allegations, each one adds three years in state prison, so that's six years.

  \*\*\*

Petitioner:    So even though I did time for that, I do it again?

The Court:    The law sets up that if you have a prior conviction it adds time, this time, right, even though you served it before.

Lodgment 3 at 215-216. The court again explained the impact of the priors. Lodgment 3 at 216. Petitioner again responded that he understood the impact. Lodgment 3 at 217. Then the court advised Petitioner of his rights:

The Court:    I just need to make sure you understand what it does. So on these, all of these priors that are alleged, you have a right to a trial, you, the right to remain silent, and the right to present evidence in your own behalf at no cost to you. Do you understand those rights?

Petitioner:    Yes, ma'am.

The Court:    And do you want to give up those rights and admit to these priors?

Petitioner:    Well, I admit to my priors, your honor.

  \*\*\*

The Court:    Is that what you want to do, give up those rights and admit the priors? I have to go through this. I have to ask you these questions.

Petitioner:    Okay, well, I have obligations myself I need to get to, so I have to say yes.

The Court:    I don't know what you mean by you have to say yes. You have these rights. We can go through the trial if you want, and if you want to admit the priors and give up the right to a trial, you can, but you have the right to a trial. You are acting like you are being coerced in some way. You are not coerced at all.

Lodgment 3 at 217-218. After expressing some uncertainty, Petitioner ultimately affirmed he would give up his right to a trial and admit the priors. Lodgment 3 at 219.

The trial court then went through each of the priors, and Petitioner admitted each of them. Lodgment 3 at 220-22. The trial court then confirmed that Petitioner was entering his plea volunarily:

The Court:    Okay, and you are agreeing to this plea. It is my understanding that you have had enough time to talk to your attorney about it and review the facts; is that correct?

Petitioner:    Yes, ma'am.

The Court:    Has anybody threatened you or anybody close to you to get you

| | | |
|---|---|---|
| 1 | | to enter this plea? |
| 2 | *** | |
| 3 | Petitioner: | I'm getting an offer I can't refuse here. Nobody has threatened me. It just has to be done, whether I like it or not. |
| 4 | The Court: | So nobody has threatened you; is that correct? |
| 5 | Petitioner: | Yes, ma'am. |
| 6 | The Court: | And have you had any liquor or drugs in the last 48 hours? |
| 7 | Petitioner: | No way. |
| 8 | The Court: | So you understand clearly what is going on? |
| 9-10 | Petitioner: | Yes, ma'am I would like - - the doctor said I was very competent; I knew what I was doing. |
| 11 | *** | |
| 12 | The Court: | So you feel like you understand what is going on? |
| 13 | Petitioner: | I do know. |
| 14 | The Court: | Are you satisfieded [sic] with your attorneys through this time? |
| 15 | Petitioner: | Everyone in the room, I'm satisfied with everybody. |
| 16-18 | The Court: | Then I will accept the plea, and I make all the findings, that the defendant has made an intelligent and voluntary waiver of his rights, that he understands the nature of the priors and the consequences of these, and you concur, Ms. Gilliam [Petitioner's counsel]? |
| 19 | Ms. Gilliam: | Yes, your honor. |

Lodgment 3 at 222-224.

The record shows that the trial court explained to Petitioner the impact and consequences of admitting the priors several times. The court answered all of Petitioner's questions, especially when he expressed some confusion or uncertainty. The court also repeatedly informed Petitioner of his rights, and of what he is giving up by admitting the priors. The record also shows Petitioner conferred with his counsel through the exchange with the court. Finally, Petitioner's trial counsel concurred with the court that Petitioner was making a knowing and voluntary waiver of his rights.

(Doc. No. 21 at 10-12.)

Petitioner's Objections

Petitioner did not raise any new arguments in his objections to the report of the magistrate

1  judge. He simply reasserts his argument that his admission to his priors was not knowing and
2  voluntary. He claims his attorney coerced him to admit his prior convictions. (Doc. No. 22.)

4  Discussion

5  After reviewing the record in full, the Court adopts the recommendation of the magistrate
6  judge. The colloquy between the judge and Petitioner at Lodgment 3 clearly demonstrates Petitioner
7  knowingly and voluntarily waived his rights when he admitted his prior convictions. Trial counsel
8  did not coerce Petitioner into admitting his prior convictions, and accordingly appellate counsel was
9  not deficient in failing to make such a claim on direct appeal.

10  Furthermore, to the extent Petitioner argues his trial counsel should have attacked the
11  constitutionality of the prior convictions based upon the involuntariness of those prior guilty pleas,
12  such a claim is not cognizable under § 2254. <u>Lackawanna County Dist. Attorney v. Coss</u>, 532 U.S.
13  394, 403-404 (2001) (holding that a petitioner cannot challenge a prior conviction used to enhance a
14  current sentence in a § 2254 petition when the prior conviction is no longer open to attack in its own
15  right). Petitioner has not shown the state court's decision was "contrary to or an unreasonable
16  application of clearly established federal law." 28 U.S.C. § 2254 (d)(1).

18  **C. Request for Evidentiary Hearing**

19  Petitioner requested an evidentiary hearing in his original petition, traverse, and objections.
20  Petitioner can only receive an evidentiary hearing if Petitioner shows that the error "resulted in a
21  decision that was contrary to, or involved in an unreasonable application of, clearly established
22  Federal law." 28 U.S.C. § 2254 (d)(1). In this case Petitioner has not met this burden. The request
23  is denied.

25  **D. Certificate of Appealability**

26  A petitioner complaining of detention arising from state court proceedings must obtain a
27  certificate of appealability to file an appeal of the final order in a federal habeas proceeding. 28
28  U.S.C. § 2253(c)(1)(A). The district court may issue a certificate of appealability if the petitioner "has

made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). Petitioner has not made a "substantial showing" as to any of the claims raised by his petition, and thus the Court sua sponte denies a certificate of appealability.

**CONCLUSION**

The Court therefore ADOPTS the magistrate judge's report, REJECTS Petitioner's objections, DENIES the Petition, DENIES the request for an evidentiary hearing, and DENIES Petitioner a certificate of appealability.

**IT IS SO ORDERED.**

**DATED: August 19, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**